FILED by MG D.C.
ELECTRONIC

October 20, 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **08-61686 Civ-Seitz/O'Sullivan**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

ACE GROUP, INC., a Delaware corporation, also
d/b/a AMERICAN CREDIT EXPERTS, INC., THE
ACE GROUP, INC., THE ACE GROUP, and ACE,

LEGAL CREDIT REPAIR CENTER, INC., a
Florida corporation, also d/b/a LCRC,

MICHAEL SINGER,

MELVIN KESSLER, and

GERALD ROTH,

Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.    The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and under Section 410(b) of the

Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), to obtain preliminary and permanent

injunctive relief, rescission of contracts and restitution, disgorgement of ill-gotten gains, and

other equitable relief against Defendants Ace Group, Inc., also d/b/a American Credit Experts,

Inc., The Ace Group, Inc., The Ace Group, and ACE; Legal Credit Repair Center, Inc., also d/b/a

1

LCRC; Michael Singer; Melvin Kessler; and Gerald Roth (collectively, "Defendants") for engaging in deceptive acts or practices in connection with the advertising, marketing, promotion, offering for sale, or sale of credit repair services in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Credit Repair Organizations Act, 15 U.S.C. §§ 1679 - 1679j.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.      Venue in the United States District Court for the Southern District of Florida is proper under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b).

## PLAINTIFF

4.      Plaintiff, the FTC, is an independent agency of the United States Government created by the FTC Act, 15 U.S.C. §§ 41-58.  The FTC is charged, *inter alia*, with enforcing Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also is charged with enforcing the Credit Repair Organizations Act. 15 U.S.C. § 1679h(a).

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the Credit Repair Organizations Act in order to secure such equitable relief as is appropriate in each case, including restitution for injured consumers. 15 U.S.C. §§ 53(b), 57b, and 1679h(b).

## DEFENDANTS

6.      Defendant ACE Group, Inc., also doing business as American Credit Experts, Inc., The Ace Group, Inc., The Ace Group, and ACE ("ACE"), is a Delaware corporation

2

registered in Florida as a foreign corporation, with its principal mailing address at 4631 NW 31st

Avenue, #181, Fort Lauderdale, Florida 33309.  Defendant ACE is located at 3900 West

Commercial Boulevard, Suite 201, Fort Lauderdale, Florida 33309.  Defendant ACE transacts or

has transacted business in this district and throughout the United States.

7.      Defendant Legal Credit Repair Center, Inc., also doing business as LCRC

("LCRC"), is an inactive Florida corporation, located at 3900 West Commercial Boulevard,

Suite 201, Fort Lauderdale, Florida 33309.  Defendant LCRC transacts or has transacted

business in this district and throughout the United States.

8.      Defendant Michael Singer ("Singer") is the President and sole Director of ACE.

At all times material to this Complaint, acting alone or in concert with others, Defendant Singer

has formulated, directed, controlled, had the authority to control, or participated in the acts and

practices of ACE and LCRC, including the acts and practices alleged in this Complaint.

Defendant Singer resides in Boca Raton, Florida, and transacts or has transacted business in this

district and throughout the United States.

9.      Defendant Melvin Kessler ("Kessler") is the Vice President of ACE.  Defendant

Kessler also served as the Director of Marketing for LCRC.   At all times material to this

Complaint, acting alone or in concert with others, Defendant Kessler has formulated, directed,

controlled, had the authority to control, or participated in the acts and practices of ACE and

LCRC, including the acts and practices alleged in this Complaint.  Defendant Kessler resides in

Fort Lauderdale, Florida, and transacts or has transacted business in this district and throughout

the United States.

10.     Defendant Gerald Roth ("Roth") is the President and sole Director of LCRC,

3

and has held himself out to the public as ACE's President.   At all times material to this Complaint, acting alone or in concert with others, Defendant Roth has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ACE and LCRC, including the acts and practices alleged in this Complaint.  Defendant Roth resides in Plantation, Florida, and transacts or has transacted business in this district and throughout the United States.

11.      Corporate Defendants ACE and LCRC (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.  They have shared officers, employees, and office locations, have commingled funds, are commonly controlled, and have engaged in a common scheme.  Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the deceptive acts and practices alleged below.

## COMMERCE

12.      At all times relevant to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

13.      Since at least 2003, and continuing thereafter, Defendants have advertised, marketed, promoted, offered for sale, and sold credit repair services to consumers in Florida and throughout the United States.  Defendants have advertised and continue to advertise their services through the Internet Web sites www.aceintake.com, www.foryourcredit.com, www.helpformycredit.com, and www.helpmycredit.com, and through pop-up Internet

4

advertisements.

14.     Through verbal representations made by Defendants' representatives and written statements on Defendants' Web sites, Defendants have offered and continue to offer credit repair services purporting to remove derogatory information from, and to improve, consumers' credit records, credit histories, and credit ratings.  Defendants claim they have a special system of filing disputes with the major credit reporting agencies that enables them to permanently remove negative information from consumers' credit reports, including late payments, charge-offs, collections, tax liens, repossessions, bankruptcies, and judgments, even where such information is accurate and not obsolete.  Defendants promise to improve consumers' credit scores for a variety of purposes, including for obtaining home mortgages and car loans.

15.     To attract consumers and induce them to purchase Defendants' credit repair services, Defendants' Web sites contain statements such as the following:

> **Through the use of systematic intelligent challenges to the three major credit bureaus ACE has a proven track record of success.  With input from clients and continuous communication ACE has developed a methodology which starts to show results in as little as 60 days.**
>
> ***
>
> **Most clients need to be with ACE for a minimum of 6 to 8 months to achieve the greatest benefits from the program.**
>
> ***
>
> **It costs $59.95 to purchase, review and audit the initial reports with scores and send you highlighted copies for your records.  We then charge $59.95 monthly at the conclusion of each months work.  The average case takes between 6-8 months.**
>
> ***
>
> **In conclusion all you need to know is ANY ITEM ON YOUR CREDIT REPORT WHICH CAN NOT BE VERIFIED REGARDLESS OF ACCURACY MUST BE REMOVED**

5

\*\*\*

**Attempt the removal of un-verifiable negative items that are lowering
your score**

\*\*\*

Money Back Guarantee

\*\*\*

If Client is in compliance with all of the terms, and there is not an
improvement or removal of any one item in any of the three credit reports,
after **the first** two challenge attempts and responses, ACE will refund a
maximum of $119.90 to the Client. [emphasis in originals]

16.     Consumers who see Defendants' Web sites or pop-up advertisements are

encouraged to contact Defendants via telephone or email for further information.  Other

consumers, who are referred to Defendants by business or personal acquaintances, also contact

Defendants for further information.

17.     Consumers interested in finding out more about Defendants' credit repair services

typically leave their telephone numbers on Defendants' Web sites so they can receive a return

phone call, although some consumers call Defendants directly.  Thereafter, Defendants'

representatives speak with the consumers to close the deal and arrange for payment of

Defendants' advance fees.  Defendants' representatives also make unsolicited phone calls to

consumers.

18.     In discussions with consumers, Defendants promise credit repair results that equal

or exceed the claims made by Defendants on their Web sites.  Defendants typically represent that

they can permanently and legally remove any negative items contained on consumers' credit

reports, even where the items are accurate and not obsolete.  In addition, Defendants represent

that they guarantee an improvement in the consumer's credit score and the correction or removal

6

of at least one disputed item from any of the consumer's three credit reports after the first two months, or else they will refund the consumer's first two monthly payments. Examples of verbal representations made by Defendants to induce consumers to purchase Defendants' services, include the following statements made by different representatives for Defendants to various undercover FTC investigators calling as consumers:

ACE REPRESENTATIVE: ...Now, in the case of bankruptcies -- everything surrounding your bankruptcy will be removed. And there is probably a 75 to 80 percent chance that the word "bankrupt" will be removed from your credit report, also, and I'll tell you how that happens. After two years, your bankruptcy is no longer kept in the courthouse. It's sent to a federal repository.

FTC UNDERCOVER: Hmm.

ACE REPRESENTATIVE: Now, in order to verify that bankruptcy, they only have the name and address of the court. So, they have to notify the court. The court no longer has the records, so they have to go to the federal repository. The federal repository has to research that information, get it back to the court and the court has to send it on to the credit bureau for verification.

Now, you have to bear in mind you're dealing with the bureaucracy of the federal government who has the federal -- runs the repository. Two, you're dealing with the bureaucracy of the

7

court by the time they get around to doing all this information.

Plus, you have the U.S. Mail sending this stuff back and forth.  So,

the odds on them getting it done in 30 days are -- while it can be

done -- are slim.

FTC UNDERCOVER:  Hmm, interesting.

ACE REPRESENTATIVE:  You see.  So, and the law says if they

can't verify it within 30 days.  Now --

FTC UNDERCOVER:  And you're saying often, 75 to 80 percent

of the time, that may be removed from my credit report because

they don't answer the verification?

ACE REPRESENTATIVE:  Exactly.

***

ACE REPRESENTATIVE:  They have to --

FTC UNDERCOVER:  To answer, right?

ACE REPRESENTATIVE:  Yeah.

FTC UNDERCOVER:  Like this is a true bankruptcy and –

ACE REPRESENTATIVE:  Right.

FTC UNDERCOVER:  -- so on and so forth.

ACE REPRESENTATIVE:  And even if they do, what we're

going to do is re-challenge them because as I told you earlier --

8

FTC UNDERCOVER: Um-hum.

ACE REPRESENTATIVE: -- we work under the guidance of corporate attorneys.

FTC UNDERCOVER: Um-hum.

ACE REPRESENTATIVE: So, if we challenge them once and they say, oh, yes, this is verified, what we do is re-challenge them again using different legal language and make them go through the steps over and over again. Our goal is to cost the credit bureau so much money that they don't want to get involved.

FTC UNDERCOVER: Uh-huh. So, of course, the concern is and the question is whether it comes off permanently. (Inaudible).

ACE REPRESENTATIVE: That's what I said. It's removed permanently.

\*\*\*

FTC UNDERCOVER: That's wonderful. So, can we just talk again about the late payments? I know you explained the bankruptcy to me. Are you saying the late payments aren't affecting my credit or --

ACE REPRESENTATIVE: They are affecting your credit, but those are easy to remove.

\*\*\*

9

FTC UNDERCOVER: Um-hum. And this is the first biggest concern. And her second big concern is her credit cards, you know. She has some store credit cards and she has some major credit cards.

ACE REPRESENTATIVE: Has she been late in paying any of those credit cards?

***

FTC UNDERCOVER: (Inaudible) a month and a half and –

ACE REPRESENTATIVE: Well, we want to remove that, also.

FTC UNDERCOVER: How does it work?

ACE REPRESENTATIVE: That works the same way. Late payments work the same . . . .

***

ACE REPRESENTATIVE: . . . . We have – we've been able to remove bankruptcies, foreclosures, judgments, charge-offs, late payments, anything negatively affecting your credit score . . . .

19.   Consumers who are persuaded to use Defendants' services are asked to pay an advance fee, and usually are asked to provide their Social Security numbers so that ACE can order their credit reports. Defendants typically charge consumers $39.95 to $59.95 initially, in order to start the process of disputing negative items by obtaining the consumer's credit reports

10

and performing an "audit" of them. Defendants then typically charge $59.95 monthly for their promised credit repair services, which Defendants represent to consumers may take up to six to eight months for best results. This fee typically is paid by credit card or banking account debit. Defendants require payment of the initial fee and the monthly fees before the promised credit repair services are fully performed. Defendants also require payment of the initial fee before Defendants send consumers their written contracts or powers of attorney to sign.

20.    Following payment of these advance fees, Defendants do not fulfill the promises made to consumers. Defendants' efforts consist solely of bombarding the major credit reporting agencies with repeated dispute letters submitted on behalf of consumers. These dispute letters typically contain vague, conclusory short statements about each disputed debt or bankruptcy record, with no further explanation or documentation, and the same items are typically disputed repeatedly, even after they have been verified. Defendants claim to consumers that this method will eventually cause the disputed items – even accurate but negative items – to drop off of the consumers' credit reports, because each time a dispute is sent, the credit reporting agencies must ask creditors or other furnishers to verify the disputed items. Defendants claim that because the creditors are busy, they often fail to respond within the time required by law, and thus the credit reporting agencies must remove the disputed items from the credit report.

21.    In fact, in most instances the dispute letters submitted by Defendants on behalf of consumers fail to result in the disputed items being corrected or removed from consumers' credit reports. Consumers who complain to Defendants are given a variety of excuses as to why the promised results have not been achieved. Defendants sometimes attempt to convince complaining consumers to stay with Defendants' program and pay additional advance fees, so

11

that the promised credit repair can be accomplished.

22.     In numerous instances, consumers' refund requests are denied by Defendants,

who claim such consumers are not eligible for a refund.  Some consumers who file formal

complaints against Defendants are unsuccessful in recovering any money from Defendants.

## THE CREDIT REPAIR ORGANIZATIONS ACT

23.     The Credit Repair Organizations Act took effect on April 1, 1997, and has since

that date remained in full force and effect.

24.     The Credit Repair Organizations Act defines a "credit repair organization" as:

> [A]ny person who uses any instrumentality of interstate commerce
> or the mails to sell, provide, or perform (or represent that such
> person can or will sell, provide, or perform) any service, in return
> for the payment of money or other valuable consideration, for the
> express or implied purpose of . . . improving any consumer's credit
> record, credit history, or credit rating[.]

15 U.S.C. § 1679a(3).

25.     The purposes of the Credit Repair Organizations Act, according to Congress, are:

> (1) to ensure that prospective buyers of the services of credit repair
> organizations are provided with the information necessary to make
> an informed decision regarding the purchase of such services; and
> (2) to protect the public from unfair or deceptive advertising and
> business practices by credit repair organizations.
> 15 U.S.C. § 1679(b).

26.     The Credit Repair Organizations Act prohibits all persons from making or using

any untrue or misleading representation of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(3).

27.     The Credit Repair Organizations Act prohibits credit repair organizations from

charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform before such service is fully performed.  15 U.S.C. § 1679b(b).

28.     Pursuant to Section 410(b)(1) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b)(1), any violation of any requirement or prohibition of the Credit Repair Organizations Act constitutes an unfair or deceptive act or practice in commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

### COUNT ONE

29.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of services to consumers by a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have made untrue or misleading representations to induce consumers to purchase their credit repair services, including, but not limited to, the representation that Defendants can improve substantially consumers' credit reports or profiles by permanently removing negative information from consumers' credit reports, even where such information is accurate and not obsolete.

30.     Defendants have thereby violated Section 404(a)(3) of the Credit Repair Organizations Act.  15 U.S.C. § 1679b(a)(3).

### COUNT TWO

31.     In numerous instances, in connection with their operation as a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act,

13

15 U.S.C. § 1679a(3), Defendants have charged or received money or other valuable consideration for the performance of credit repair services that Defendants have agreed to perform before such services were fully performed.

32.     Defendants have thereby violated Section 404(b) of the Credit Repair Organizations Act.  15 U.S.C. § 1679b(b).

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

33.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce.

34.     Misrepresentations or omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT THREE

35.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit repair services, Defendants have represented, expressly or by implication, that they can improve substantially consumers' credit reports or profiles by permanently removing negative information from consumers' credit reports, even where such information is accurate and not obsolete.

36.     In truth and in fact, in numerous of these instances, Defendants cannot improve substantially consumers' credit reports or profiles by permanently removing negative information from consumers' credit reports where such information is accurate and not obsolete.

37.     Therefore, Defendants' representations set forth in Paragraph 35 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act. 15 U.S.C. § 45(a).

14

## CONSUMER INJURY

38.     Consumers have suffered, and continue to suffer, substantial monetary loss as a result of Defendants' violations of the FTC Act and the Credit Repair Organizations Act.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts and practices.  Absent injunctive relief, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public.

## THIS COURT'S POWER TO GRANT RELIEF

39.     Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act and the Credit Repair Organizations Act.  The Court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including, but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains, to prevent and remedy injury caused by Defendants' law violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), and the Court's own equitable powers, requests that this Court:

1.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a preliminary injunction;

15

2.      Enter a permanent injunction to prevent future violations of the FTC Act and the

Credit Repair Organizations Act by Defendants;

3.      Award such equitable relief as the Court finds necessary to redress injury to

consumers resulting from Defendants' violations of the FTC Act and the Credit Repair

Organizations Act, including, but not limited to, rescission of contracts and restitution, and the

disgorgement of ill-gotten gains by Defendants; and

4.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Dated: October 16, 2008                    Respectfully submitted,

                                           WILLIAM BLUMENTHAL
                                           General Counsel


                                           LEONARD L. GORDON
                                           Director
                                           Northeast Region

                                           _____
                                           Michele Stolls (Bar No. A5501233)
                                           Robin E. Eichen (Bar No. A5501247)
                                           Federal Trade Commission, Northeast Region
                                           One Bowling Green, Suite 318
                                           New York, NY 10004
                                           Telephone:  (212) 607-2834 (Stolls)
                                                       (212) 607-2803 (Eichen)
                                           E-mail:     mstolls@ftc.gov
                                                       reichen@ftc.gov
                                           Facsimile:  (212) 607-2822

                                           **Attorneys for Plaintiff Federal Trade Commission**

16

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)  **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

Federal Trade Commission

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michele Stolls and Robin E. Eichen
Federal Trade Commission, One Bowling Green, Suite 318
New York, New York 10004

**DEFENDANTS**

County of Residence of First Listed Defendant   Broward
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

0:08cv61686 PAS/SSO

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☒ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE
HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☑ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine    **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability    ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability    ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury    ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting    ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations    **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |    ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare    ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment    ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 446 Amer. w/Disabilities - Other    ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights    ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**   (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☐ YES ☑ NO

JUDGE        DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

US Civil Statutes: 15 U.S.C. Section 45(a) and 15 U.S.C. Sections 1679-1679j
Operation of an illegal credit repair scheme.
LENGTH OF TRIAL via __5__ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
s/ *Michele Stolls*

DATE 10/16/08

**FOR OFFICE USE ONLY**

AMOUNT _____  RECEIPT # _____  IFP _____